■ UBAF ARAB AMERICAN BANK, Appellant, v WILLIAM J. SANCHEZ, Respondent.—Order of the Supreme Court, New York County (Burton Sherman, J.), entered February 22, 1990, which denied plaintiff UBAF Arab American Bank's motion to reargue and renew a protective order granted December 15, 1989, which vacated its notices of deposition of nonparty witnesses Citibank and Royce Hotel and quashing the subpoena served upon the Royce Hotel, and a protective order granted June 21, 1989, which vacated plaintiff's demand for documents from defendant concerning his charge account and credit card records, is unanimously modified, on the law, the facts, and the exercise of discretion, and the plaintiff's motion

for reargument and renewal granted and upon such renewal the protective orders vacated with respect to item 8 of the demand for documents served upon defendant and a deposition notice served upon Citibank, and otherwise affirmed, without costs or disbursements.

The appeal from the order of the same court and Justice, entered December 15, 1989, is dismissed as superceded by the appeal from the foregoing order, without costs.

Plaintiff UBAF Arab American Bank brought this action alleging that defendant Sanchez, its former vice-president-chief dealer, between January and July 1988, intentionally violated its limits on foreign exchange contracts for transactions made for plaintiff bank's own account and concealed such unauthorized foreign exchange transactions by falsifying internal bank records, resulting in losses of $11.5 million. Breach of fiduciary duty, unjust enrichment and fraud were asserted, upon which plaintiff bank sought $11.5 million damages *and* an accounting and return of all amounts received by defendant from his unauthorized trading activities.

In item 8 of plaintiff's demand for documents of defendant, served shortly after the complaint, plaintiff sought "[a]ll American Express, Visa, MasterCard, Diners Club, or other charge account or credit card records and receipts for the period January 1, 1988 to July 15, 1988". In an order entered June 21, 1989, the IAS court, *inter alia,* struck this item, finding "that at present, disclosure of such records is an unwarranted invasion of personal privacy" and prejudicial, in the absence of competent evidence (as opposed to conjecture) of lavish spending by defendant.

Plaintiff then served a notice of deposition upon defendant (which defendant has thus far refused to obey), containing a demand for production of defendant's 1988 Citibank savings, checking and credit records. Plaintiff also served nonparty Citibank with a notice of deposition and subpoena for such records. Plaintiff also served nonparty Royce Hotel with a notice of deposition and subpoena for records of stays by defendant between March 1 and June 30, 1988, including room and telephone charges. Defendant moved for a protective order as to these three sets of demands but before service of that motion, Citibank provided the records demanded of it to plaintiff.

The IAS court, in an order dated December 15, 1989, granted defendant's motion for a protective order to the extent of vacating the deposition notices of nonparties Citi-

bank and Royce Hotel and the Royce Hotel subpoena, denying the motion, however, as to the Citibank subpoena on grounds that it had already been complied with. The court failed to address that part of the motion concerning defendant's own deposition and production of documents but found plaintiff had failed to demonstrated adequate special circumstances to warrant the deposition of nonparties, particularly in the absence of any probative evidence showing improper financial benefit to defendant from the alleged unauthorized trading.

Based upon the Citibank records it had obtained, plaintiff moved to reargue and renew the protective order previously granted as to defendant's charge accounts and credit cards, and to reargue and renew the second protective order granted defendant as to Citibank and Royce Hotel's depositions and the Royce Hotel subpoena. These Citibank records showed an increase in defendant's combined Citibank accounts from approximately $15,000 as of December 1987 to approximately $57,000 as of June 1988, as well as a $26,460 check to an unidentified payee in July of 1988. In an order dated February 1, 1990, the IAS court denied the motion.

We find that the IAS court improperly required the plaintiff bank to prove defendant obtained a financial benefit from the unauthorized trading before allowing discovery which might establish such benefit. Discovery is, of course, designed to allow access to information enabling a party to prove its case, and is not limited to situations where the party first proves its case *(Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403; *AGH Distribs. v Silvertone Fasteners,* 105 AD2d 648). Although defendant contends his own gain is irrelevant as plaintiff only seeks damages for its losses in the foreign exchange transactions, the complaint expressly seeks an accounting and return of all amounts received by defendant for his unauthorized trading activities.

Further, the IAS court's denial of plaintiff's renewal motion as to the credit card protective order on the basis that no new information was provided and no excuse was given for not providing it initially was in error. Upon the first motion plaintiff did not have the Citibank records. In its grant of a protective order, the court implicitly invited a renewal motion in stating that, *on that record,* plaintiff had not laid a foundation for the claim that the credit card records might reflect lavish expenditures beyond defendant's ordinary means. Thereafter, plaintiff obtained the Citibank records leading directly to its renewal motion. (The credit card demand was not involved in defendant's second motion for a protective

order.) Thus, it is clear all the prerequisites for a renewal motion were met by plaintiff *(Foley v Roche,* 68 AD2d 558, 568). Nor was there any basis for the court's "privacy" concerns with respect to the credit card records. The demand upon defendant for his charge account-credit card records, under the circumstances herein, plainly should be allowed.

Likewise, plaintiff may depose Citibank, to learn the identity of the payee of defendant's $26,460 check. In such deposition, plaintiff might also be able to learn of the source of the frequent, large deposits by defendant between December 1987 and June 1988, although it is less likely Citibank has such information. Although Citibank is a nonparty, given defendant's lack of cooperation, defendant can hardly maintain the information should be discovered from him *(see, Dioguardi v St. John's Riverside Hosp.,* 144 AD2d 333, 334).

However, we do not disturb the protective order with respect to the Royce Hotel deposition and subpoena. Such records will not demonstrate whether defendant received any financial benefit from the alleged trading. Even if they do show defendant met with alleged confederate Qualandone, as plaintiff argues, this is not particularly probative. Defendant and his co-worker had ample opportunity to discuss, plan and carry out any scheme at work. The demands appear designed only to harass and prejudice defendant as to a possible relationship with Qualandone. Concur—Rosenberger, J. P., Asch, Kassal, Wallach and Smith, JJ.